UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
CASE NO. 20-11524

CMR CONSTRUCTION AND ROOFING, LLC
A/A/O THE ORCHARDS CONDOMINIUM ASSOCIATION, INC.,

Appellant,

vs.

EMPIRE INDEMNITY INSURANCE COMPANY.

Defendant/Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
_____

**ANSWER BRIEF OF EMPIRE INDEMNITY
INSURANCE COMPANY**
_____

BUTLER WEIHMULLER KATZ CRAIG LLP

ANTHONY J. RUSSO, ESQ.
Florida Bar No.:  508608
arusso@butler.legal
J. PABLO CÁCERES, ESQ.
Florida Bar No.: 131229
pcaceres@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone:  (813) 281-1900
Facsimile:   (813) 281-0900

*Counsel for Empire Indemnity Insurance Company*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1, Appellee EMPIRE INDEMNITY INSURANCE COMPANY ("Empire"), files this Certificate of Interested Persons & Corporate Disclosure Statement. The following is a full and complete list of the trial judges and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal.

1. Butler Weihmuller Katz Craig LLP - Counsel for Appellee

2. Cabulea, Mihaela – Appellate Counsel for Appellee

3. Caceres, J. Pablo – Trial and Appellate Counsel for Appellee

4. CMR Construction and Roofing, LLC, a/a/o The Orchards Condominium Association, Inc. – Appellant

5. Corrigan, Timothy J. - United States District Court Judge, Middle District of Florida

6. Empire Indemnity Insurance Company – Appellee

7. Feldman, Alan – Appellate Counsel for Appellant

8. Fernandez, Gabriel – Trial Counsel for Appellant

9. Frazier, Douglas N. - United States District Court Magistrate Judge, Middle District of Florida

10. Hahn, Matthew – Vice President of the Orchards Condominium Association, Inc.

11.    Johnson, Mark – President of The Orchards Condominium

Association, Inc.

12.    Magnuson, Paul A. - United States District Court Judge, Middle

District of Florida

13.    Mirando, Carol - United States District Court Magistrate Judge,

Middle District of Florida

14.    Mizell, Nicholas P. - United States District Court Magistrate Judge,

Middle District of Florida

15.    Phillips, Kathleen P. – Counsel for Appellee

16.    Povlsen, Jennie – Director of The Orchards Condominium

Association, Inc.

17.    Reliant Public Adjuster, LLC – Public Adjustor for The Orchards

Condominium Association, Inc.

18.    Russo, Anthony J. – Appellate Counsel for Appellee

19.    Secatore, Lynn – Secretary and Treasurer of The Orchards

Condominium Association, Inc.

20.    Soule, Steven M. – President of CMR Construction and Roofing.

LLC., Appellant

21.    Steele, John E. - United States District Court Judge, Middle District of

Florida

22.     Tinelli, Anthony – Trial Counsel for Appellant

23.     Tinelli Fernandez, PLLC – Counsel for Appellant

24.     Thomas, Mick – Director of The Orchards Condominium

Association, Inc.

## CORPORATE DISCLOSURE STATEMENT

EMPIRE INDEMNITY INSURANCE COMPANY, pursuant to 11th Circuit Rule 26.1-1, hereby makes the following Corporate Disclosure:

Empire Indemnity Insurance Company is a wholly owned subsidiary of Empire Fire and Marine Insurance Company, an Illinois corporation. Empire Fire and Marine Insurance Company is a subsidiary of Zurich American Insurance Company, a New York corporation. Zurich American Insurance Company is a wholly owned subsidiary of Zurich Holding Company of America, Inc., a Delaware corporation. Zurich Holding Company of America, Inc., is wholly owned by Zurich Insurance Company Ltd., a Swiss corporation. Zurich Insurance Company Ltd. is directly owned by Zurich Insurance Group Ltd., a Swiss corporation. Zurich Insurance Group Ltd. is the only publicly traded parent company, with a listing on the Swiss stock exchange, and a further trading of American Depositary Receipts. Stock Ticker: ZURVY.

# STATEMENT REGARDING ORAL ARGUMENT

Empire Indemnity Insurance Company respectfully requests that oral argument be granted in this case.  The coverage issues addressed in this appeal are repeatedly raised in Florida property insurance cases because the contract provisions at issue herein are common to so many policies.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

CORPORATE DISCLOSURE STATEMENT ....................................................C-4

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS........................................................................... ii

TABLE OF CITATIONS .........................................................................v

STATEMENT OF SUBJECT-MATTER AND

APPELLATE JURISDICTION ................................................................1

STATEMENT OF THE ISSUES.................................................................2

STATEMENT OF THE FACTS AND CASE ...................................................3

I.      Statement of the relevant proceedings............................................3

II.     Statement of the relevant facts....................................................8

STANDARD OF REVIEW .....................................................................10

SUMMARY OF THE ARGUMENT ...................................................................11

ARGUMENT ......................................................................................14

I.      The district court did not err in granting Empire's motion for

        summary judgment:  CMR pleaded a case seeking an award of policy

        proceeds on a full replacement cost basis, but CMR never "actually

        repaired or replaced" the damaged property, a precondition to

        recovery of such benefits. ...........................................................14

A.      CMR never actually repaired or replaced the damaged property,
        and so is not entitled to recover policy proceeds on a
        replacement cost basis. .......................................................................14

B.      CMR mis-analyzes the policy; the district court properly
        applied it. ...........................................................................................18

II.   CMR has no basis in law or in fact to claim Empire breached the
      insurance contract, and has not demonstrated that the district court
      erred in relying on the *Buckley Towers* case. ................................................20

A.      CMR has always and only made a claim for policy proceeds
        computed on a replacement cost basis. ...............................................20

B.      The CMR estimate has no evidentiary value as proof of the
        actual cash value of the damaged property, and does not create
        any genuine dispute of material fact as to Empire's valuations..........22

C.      The case of *Citizens Prop. Ins. Corp. v. Tio*, No. 3D18-2440,
        2020 WL 1291855 (Fla. 3d DCA Mar. 18, 2020) has no
        application to this case. .......................................................................23

D.      The district court did not err in citing to the case *of Buckley
        Towers*. ...............................................................................................24

E.    CMR has waived all argument as to the central provision at

issue in this case - the replacement cost provision in the parties'

contract requiring "actual replacement."............................................25

III.   The district court correctly denied CMR's motion to stay the litigation

and compel appraisal. (DE 30.) ....................................................................27

A.    CMR acted inconsistently with its right to seek appraisal, and

thereby waived that right. ..................................................................27

B.    The trial court applied the correct law to the uncontested facts

and reached the correct conclusion:  CMR waived any right to

seek appraisal. ....................................................................................29

C.    The undisputed facts, interpreted in light of the controlling law,

show that the district court was correct:  CMR acted

inconsistently with its right to seek appraisal and thereby

waived that right. ...............................................................................31

D.    Alternatively, the appraisal process was not available under the

plain terms of the contract, and the undisputed record facts. .............34

CONCLUSION ........................................................................................................36

CERTIFICATE OF COMPLIANCE.......................................................................38

CERTIFICATE OF SERVICE ................................................................................38

# TABLE OF CITATIONS

**Cases**

*Am. Reliance Ins. Co. v. Perez*,

689 So. 2d 290 (Fla. 3d DCA 1997)..................................................20

*ARI Mut. Ins. Co. v. Hogen*,

734 So. 2d 574 (Fla. 3d DCA 1999)..................................................33

*BDO Seidman, LLP v. Bee*,

970 So. 2d 869 (Fla. 4th DCA 2007)..................................................11

*Bryant v. U.S. Steel Corp.*,

428 F. App'x 895 (11th Cir. 2011) ..................................................25

*Buckley Towers Condominium, Inc. v. QBE Insurance Corp.*,

395 Fed. App'x 659 (11th Cir. 2010) .......................................... 15, 16, 24, 25

*Ceballo v. Citizens Prop. Ins. Corp.*,

967 So. 2d 811 (Fla. 2007) ..............................................................16

*Citzens Prop. Ins. Corp. v.Tio*,

2020 WL 12191855 (Fla. 3d DCA Mar. 18, 2020) ................................. 23, 24

*Fla. Ins. Guar. Ass'n Inc. v. Castilla*,

18 So. 3d 703 (Fla. 4th DCA 2009)..................................................11

*Fla. Ins. Guar. Ass'n v. Branco*,

148 So. 3d 488 (Fla. 5th DCA 2014)..................................................32

v

*Fla. Ins. Guar. Ass'n v. Reynolds*,

148 So. 3d 840 (Fla. 5th DCA 2014)................................................................32

*\*Fla. Ins. Guar. Ass'n v. Somerset Homeowners Ass'n, Inc.*,

83 So. 3d 850 (Fla. 4th DCA 2011)................................................ 15, 16, 20

*Fla. Ins. Guar. Ass'n v. Waters*,

157 So. 3d 437 (Fla. 2d DCA 2015 ................................................................32

*Goff v. State Farm Fla. Ins. Co.*,

999 So. 2d 684 (Fla. 2d DCA 2008)................................................................17

*\*Gray Mart, Inc. v. Fireman's Fund Ins. Co.*,

703 So. 2d 1170 (Fla. 3d DCA 1997)........................................... 27, 33

*Jaffke v. Dunham*,

352 U.S. 280; 77 S.Ct. 307, 1 L.Ed.2d 314 (1957) ................................34

*Lucas v. W. W. Grainger, Inc.*,

257 F.3d 1249 (11th Cir. 2001) ................................................................34

*Marek v. Singletary*,

62 F.3d 1295, 1298 n. 2 (1995) ................................................................27

*Morrell v. Wayne Frier Mfd. Home Ctr.*,

834 So. 2d 395 (Fla. 5th DCA 2003)................................................................33

*Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of*

    *Georgia*,

        633 F.3d 1297 (11th Cir. 2011) ........................................35

*Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*,

        821 F.2d 772 (D.C. Cir. 1987)................................... 11, 28

*Owens & Minor Med., Inc. v. Innovative Mktg. & Distribution Servs., Inc.*,

        711 So. 2d 176 (Fla. 4th DCA 1998)................................33

*People's Tr. Ins. Co. v. Vidal*,

        2020 WL 2463075, at *2 (Fla. 3d DCA May 13, 2020) .................................10

*Peppers v. Cobb County*,

        835 F.3d 1289 (11th Cir. 2016) ........................................10

*Pinares v. United Techs. Corp.*,

        2020 WL 5103848, at *3 (11th Cir. Aug. 31, 2020) .......................................10

*Prudential Prop. & Cas. Ins. Co. v. Swindal*,

        622 So. 2d 467 (Fla. 1993) .............................................16

*Raymond James Fin. Servs., Inc. v. Saldukas*,

        896 So. 2d 707 (Fla. 2005) ................................. 11, 28, 31

*Sapuppo v. Allstate Ins. Co.*,

        739 F.3d 678 (11th Cir. 2014) ........................................27

*Seville Condominium v. Clearwater Development Corp.*,

    340 So. 2d 1243 (Fla. 2d DCA 1976)..............................................................28

*SHP IV Harbour Island, LLC v. Boylan*,

    273 So. 3d 249 (Fla. 5th DCA 2019)............................................................28

*\*State Farm Fire & Cas. Co. v. Patrick*,

    647 So. 2d 983 (Fla. 3d DCA 1994)............................................ 14, 16, 17, 19

*State Farm Fla. Ins. Co. v. Crispin*,

    290 So. 3d 150 (Fla. 5th DCA 2020)............................................................28

*State Farm Mut. Auto. Ins. Co. v. Menendez*,

    70 So. 3d 566 (Fla.2011) ..............................................................................16

*United States v. Coy*,

    19 F.3d 629 n. 7 (11th Cir. 1994) ..................................................................27

*Wynmoor Cmty. Council, Inc. v. QBC Ins. Corp.*,

    2011 WL 13097086 (S.D. Fla. Aug. 12, 2011) ........................................ 32, 33

**Statutes**

§ 627.7011, Fla. Stat. ...............................................................................................24

## STATEMENT OF SUBJECT-MATTER AND
## APPELLATE JURISDICTION

The United States District Court for the Middle District of Florida had subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), because the Plaintiff, along with its members, and the Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. There was and still is complete diversity between Plaintiff, along with its member, and the Defendant, Empire Indemnity Insurance Company ("Empire"), an Illinois corporation. CMR Construction and Roofing, LLC ("CMR") is a citizen of Missouri. CMR is registered as a domestic limited liability company in Missouri. CMR's principal place of business is also in Missouri, at 3006 North Lindberg Boulevard, Suite 703, St. Ann, Missouri 63074. CMR, an "LLC," has only one member, Steven M. Soule. Mr. Soule also is a citizen of Missouri. CMR is the assignee of a property insurance claim related to property in Florida. This is a breach of contract action.

This Court also has jurisdiction to review the orders leading to the judgment for Empire under 28 U.S.C. § 1291, because the district court granted final summary judgment in favor of Empire on April 1, 2020, (DE 72) and entered its judgment on April 2, 2020. (DE 73.) A notice of appeal was timely filed on April 22, 2020. (DE 78.)

## STATEMENT OF THE ISSUES

Appellant CMR challenges two orders issued by the district court; the first is an order denying CMR's motion to stay litigation and compel appraisal (DE 34); the second is an order granting Empire's motion for summary judgment.  (DE 72.) However, CMR states in its Initial Brief that there are six issues.  Appellant's Issues 1-5 all regard the summary judgment order, and Appellant's Issue 6 regards the appraisal order.  In the argument section of this brief, Appellee Empire will respond to all six issues in the course of defending these two orders of the district court, addressing in its Issues I and II the dispositive summary judgment motion, and addressing the matter of appraisal in its Issue III.

CMR's motion to stay litigation and compel appraisal is found at DE 23; the district court's Order denying that motion is found at DE 34.  The legal issue is whether CMR acted inconsistently with its right to seek appraisal, and so waived that right.  Empire's motion for summary judgment is found at DE 47; the district court Order granting Empire's motion is found at DE 72.  The sub-issues as to summary judgment are (a) whether CMR made a claim for policy proceeds on an actual cash value basis or a replacement cost basis; (b) whether CMR actually repaired or replaced the damaged property; and (c) whether the policy, the contract of the parties, requires CMR to actually repair or replace damaged property before

becoming contractually entitled to recover policy proceeds on a replacement cost basis, i.e., without regard to depreciation or code upgrade expenses.

## STATEMENT OF THE FACTS AND CASE

### I.    Statement of the relevant proceedings.

Nature of the case.  This case concerns a commercial property insurance coverage dispute.  CMR, a construction firm, obtained an assignment of insurance benefits from The Orchards Condominium Association and then sued Empire to recover insurance proceeds for claimed hurricane damage to the roofs of the condominium buildings.  The parties disputed whether payment was owed on a replacement cost basis.  The district court granted summary judgment to Empire ruling that because CMR did not repair or replace the damaged property, a contractual pre-requisite to recovery of proceeds on such basis, no such payment was owed.

**CMR's lawsuit seeks recovery on the CMR replacement cost estimate.** On September 18, 2018, CMR filed its lawsuit in state court raising a single claim for breach of contract, alleging that Empire failed to pay replacement cost proceeds after it was provided "a detailed, itemized quote for replacement of the roof and exterior damages with accurate pricing and scope of repair as well as supportive documentation."  (DE 3 at 4.)  This was an apparent reference to CMR's May 2018 replacement cost estimate.  In sworn answers to interrogatories (DE 47-6 at 14,

¶17), CMR stated, "Plaintiff is claiming Replacement Cost Value," citing to the revised and even larger replacement cost estimate prepared by CMR dated December 16, 2019, in the amount of $6,704,412.57.  (DE 47-5 at 64.)  Mr. Clear Dayland, author of the CMR estimate, confirmed the CMR estimate is for replacement of all the roofs.  (DE 47-4 at 55-56.) [1]

Along with its complaint, CMR served upon Empire interrogatories, requests for production of documents, and requests for admissions, all of which were answered in due course.  In its complaint, CMR demanded "judgment for damages" and prayed for "a trial by jury on all issues so triable."  (DE 3 at 4-5.) Empire then removed the matter to this Court and answered the complaint.  (DE 9.) Empire also demanded a jury trial.  (DE 21.)  Counsel for the parties signed a Case Management Report (DE 14) setting out the time frames for discovery and the jury trial.

**CMR moves to stay the litigation and compel Empire to appraisal.**

Months after filing its lawsuit, CMR filed a motion seeking an order that would stay the litigation and compel the parties into the alternative dispute resolution mechanism of appraisal, as provided in the policy. (DE 23.) CMR asserted that the parties had a difference of opinion as to the amount of loss, and that fact was

---

[1]  The CMR estimate contains a column for depreciation that is uniformly valued by CMR at "0.00," and hence the "ACV" column is the same value as the "RCV" column.  (DE 47-5.)  This is consistent with CMR's assertion that it makes no separate claim for the actual cash value of the damaged property.

sufficient to justify its invocation of the appraisal clause. (*Id.*) Empire responded by:

- objecting to CMR's request to stay discovery which Empire needed to defend itself  (DE 27 at 14, ¶ IV);

- objecting to appraisal as CMR had waived that right when it brought suit, choosing to litigate the matter  (DE 27 at 13-14);

- asserting that there was no disagreement as to the "amount of loss," as there was no claim or proof by CMR for the actual cash value of the loss, and there was no claim for actually-incurred repair costs  (DE 27 at 6, ¶¶ 17-20; 10, ¶ B); and

- objecting that as an assignee, CMR had no standing to invoke the appraisal clause of the policy, to which it was not a party (DE 27 at 8, ¶ II).

Plaintiff was permitted to reply.  (DE 31.)

**The district court denies CMR's motion for stay and to compel appraisal.**  (DE 34)  The district court denied CMR's motion on the singular ground that CMR had acted inconsistently with the right to appraisal.  (DE 31 at 11.)  The district court, referenced the parties' actions in litigating the matter, made a factual finding that "plaintiff acted inconsistently with its right to appraisal by seeking to benefit from conducting discovery and otherwise engaging in litigating the case for seven months before invoking appraisal, with prejudice undoubtedly

5

inuring to Empire via attorney's fees and costs."  (DE 34 at 12.)  This ruling is the subject of Appellant's issue II in this appeal.  (DE 78.)

**Empire moves for summary judgment.**  After seven months of discovery, Empire filed its motion for summary judgment.  (DE 47.)  Empire argued that

- CMR could not establish any right to be indemnified for repair costs or Replacement Cost ("RCV"), which was its only stated basis for damage recovery, because it made no repairs, and such actual repair is a prerequisite to recover on a replacement cost basis.  (DE 47 at 1.)

- An insurance policy is a contract of indemnity.  Under the policy, CMR could seek either indemnification for the actual cash value ("ACV") of the covered loss or it could seek indemnification (i.e., reimbursement) for what it had actually paid for repairs.  (DE 47 at 1.)

- But CMR did not sue Empire seeking the former (i.e., actual cash value) and CMR could not prove the latter (i.e., replacement cost) as it made no repairs. In sworn answers to interrogatories, CMR established that only "temporary repairs" were made.  (DE 47-6 at 14, ¶16.)

- CMR was not entitled to recover damages on a replacement cost basis because neither the policy nor Florida law requires insurers to make payment "upfront" for anticipated or estimated repair costs.  (DE 47 at 1-2.)

- CMR could not prove Empire breached the Policy by not paying amounts due for increased costs of construction coverage (projected unincurred costs related to compliance with ordinance and building laws), as CMR did not make the repairs within two years of the loss.  (DE 47 at 2.)

CMR responded to the motion.  (DE 57.)  Empire was permitted a reply.  (DE 62.) The district court allowed oral argument, and the transcript was filed. (DE 87.)

**The district court grants Empire's summary judgment motion:**  After hearing the parties' arguments, the district court found no genuine dispute of material fact precluded entry of judgment for Empire.  The district court, in pertinent part, ruled:

> The insurance policy allows CMR to elect to receive either actual cash value ("ACV") for the damage or RCV for repairs made.  The policy states that Empire "will not pay on a replacement cost basis for any loss or damage:  (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacements are made as soon as reasonably possible after the loss or damage."  (Policy (Docket No. 47-1) at 46.)  Thus, under the plain terms of the policy, CMR is responsible for making repairs before Empire owes any RCV.

> To receive ACV, the policyholder must submit the replacement cost for the property including depreciation.  (Id.)  There is no dispute that CMR has thus far made only temporary repairs, which are not covered under the policy. (Pl.'s Answer to Interrog. at 8.)

> …

> Viewing the facts in the light most favorable to CMR, the Court is unpersuaded that a genuine dispute of material fact exists.  See Fed. R.

> Civ. P. 56(a).  <u>Empire did not breach the policy in failing to pay the RCV because CMR did not undertake any repairs to which that policy provision applied. Nor did Empire breach the policy in failing to pay ACV because CMR never requested payment for ACV.</u>

(Memorandum and Order, DE 72 at 2, 4.)  (emphasis supplied)  This is the second order that is appealed by CMR and it is the subject of Appellant's Issue IV in this appeal. (DE 78.)  Judgement was thereafter entered for Empire (DE 73) and this appeal followed (DE 78).

## II.    Statement of the relevant facts.

**The insured property; the loss; the claim and Empire's acceptance of coverage and claim adjustment.**  Empire issued a commercial property insurance policy insuring 31 buildings owned by The Orchards Condominium Association, Inc.  (DE 47-1 at 8-11.)  This is a Replacement Cost policy. (DE 46-1 at 8.) The "replacement cost" proceeds are payable only if "the lost or damaged property is actually repaired or replaced."  (DE 47-1 at 46, ¶ 3.d(1).)  The policyholder may elect to "make a claim for loss or damage . . . on an actual cash value basis instead of on a replacement cost basis."  (DE 47-1 at 46, ¶ 3.c.)  In the event actual cash value is selected by the policyholder, a claim for proceeds on a replacement cost basis may still be made if the policyholder notifies the insurer of its "intent to do so within 180 days after the loss or damage."  (DE 47-1 at 46, ¶ 3.c.))

Each building had a separate limit of insurance and a separate $5,000 deductible.  (*Id.* at 13-15.)  On September 10, 2017, Hurricane Irma damaged

several of The Orchards' buildings. (DE 47-1, at 2.)  This loss was first reported to Empire on October 12, 2017.  *See* declaration of Empire's general adjustor, Peter Hanrahan, establishing the date of Empire's first inspection of the damaged property in October 2017.[2]  (DE 57-3 at 3 of 25, dep. p.8:9-13; *see also* DE 27-1, ¶ 6-8.)

Empire accepted coverage and investigated the claim within a month of the storm.  Ultimately, Empire's building consultant firm, J.S. Held, inspected the property and created a report dated January 16, 2018, that includes findings as to the replacement cost to repair the damage found ("RCV" column) and the applicable depreciation to determine the actual cash value of the damage ("ACV" column).  (DE 23-1.)  JS Held concluded that two of the buildings suffered damage in an amount in excess of the deductible, and a payment was issued that was calculated by applying both the deductible and depreciation.  (DE 27-1, ¶¶ 8-9, 11.)  Empire asserts below in the argument section of this brief, that this payment is not relevant to the issues in dispute in this appeal.

**The assignment of the claim to CMR, and CMR's claim for the full replacement cost of all the roofs:**  On April 12, 2018, The Orchards assigned its rights under the insurance policy to CMR, which now stands in The Orchards'

---

[2]  Note disparity in CMR's answers to interrogatories at (DE 47-6, at 1) ("On March 21, 2018, The Orchards made an insurance claim to Empire for Irma-related damage.")

shoes.  (DE 3.)   CMR asserts that Empire breached the policy because the roof

tiles are discontinued, making spot repairs impossible, and the City of Naples

would not issue a permit for installation of mismatched tiles.  (DE 47-4 at 96.)  In

May 2018, CMR submitted what it called a "replacement cost estimate" to Empire

for the anticipated, estimated cost of replacing every roof for a total projected cost

of $4,953,900. (DE 48-5 at 2.)  CMR did not actually repair or replace the

damaged property.  Empire did not pay on this 2018 full replacement cost

estimate.

## STANDARD OF REVIEW

**Empire's Issues I, II.**  At the summary judgment stage, this Court takes all

of the facts in the record and draws all reasonable inferences in the light most

favorable to the non-moving party.  *Peppers v. Cobb County*, 835 F.3d 1289, 1295

(11th Cir. 2016).  Review of the district court's order granting summary judgment

is *de novo*.  *Pinares v. United Techs. Corp.*, No. 18-15104, 2020 WL 5103848, at

*3 (11th Cir. Aug. 31, 2020)**.**

**Empire's Issue III**.  "In reviewing an order denying a motion to compel

appraisal, the trial court's factual findings are reviewed for competent, substantial

evidence and the lower court's application of the law to the facts is reviewed *de

novo*."  *People's Tr. Ins. Co. v. Vidal*, No. 3D19-930, 2020 WL 2463075, at *2

(Fla. 3d DCA May 13, 2020) (citing *Fla. Ins. Guar. Ass'n, Inc. v. Castilla*, 18 So.

3d 703, 704 (Fla. 4th DCA 2009)). "Because the underlying facts with respect to the waiver issue are not in dispute, we review and address only the lower court's legal determination as to waiver." *Castilla*, 18 So. 3d at 705. "In reviewing the denial of a motion to compel arbitration, the trial court's factual findings are reviewed under a competent, substantial evidence standard." *BDO Seidman, LLP v. Bee*, 970 So. 2d 869, 873–74 (Fla. 4th DCA 2007).

> In determining whether the right to arbitration has been waived, "(t)he essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right."

*Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005) (quoting *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987)).

## SUMMARY OF THE ARGUMENT

**As to CMR's statement of the issue no. 1:** The plain language of the "Replacement Cost" provision of the policy requires the policyholder to actually repair or replace the damaged property "as soon as reasonably possible after the loss or damage" before Empire is obliged to make payment on a full replacement cost basis. (DE 47-1 at 46, ¶ 3.d.(1), (2), ¶3.e, ¶3.f.) This valid contractual provision has been enforced in a long line of cases. No dispute exists that CMR never actually repaired or replaced the damaged property. Thus, no genuine issue

of material fact existed to bar entry of the summary judgment for Empire on the breach of contract issue.

**As to CMR's statement of the issue no. 2:**  CMR has substantially mis-analyzed the "Loss Payment" and "Replacement Cost" provisions of the policy.  These provisions establish the policyholder's and Empire's rights and obligations as to the payment of proceeds on either an Actual Cash Value or Replacement Cost basis.  (DE 47-1 at 42.)  The "Valuation Condition" of the policy (DE 47-1 at 43) is replaced, in part, by the Optional "Replacement Cost" coverage provision.  (DE 47-1 at 46.)  The Replacement Cost provision allows the policyholder to recover proceeds on a Replacement Cost basis, i.e., without deduction for depreciation, only if the damaged property is actually repaired or replaced as soon as reasonably possible.  CMR never actually repaired or replaced the damaged property, and so Empire had no contractual obligation to pay proceeds on a Replacement Cost basis.

**As to CMR's statement of the issue no. 3:**  CMR has no valid claim for the estimated, anticipated "Increased Cost of Construction Coverage" that might be incurred due to the application of "Ordinance and Law" requirements.  (DE 47-1 at 64, ¶ 3.)  Such proceeds are not payable "until the property is actually repaired or replaced . . . as soon as reasonably possible . . . not to exceed two years."  (DE 47-

1 at 65, ¶4.a.)  And so, because CMR has not "actually repaired or replaced" the damaged property, Empire is not contractually obligated to pay such proceeds.

**As to CMR's statement of the issues no. 4 and no. 5:**  CMR sued Empire seeking payment on a *replacement cost basis*.  (DE 3, ¶16.)  CMR swore under oath in interrogatories that it seeks payment calculated on a *replacement cost basis*. (DE 47-6 at 14, ¶17.)  CMR cannot now on appeal claim that it was not paid sufficient *actual cash value* benefits.  CMR never made a claim under the policy (or in its pleadings or filed papers) for proceeds on an actual cash value basis.

**As to CMR's statement of the issue no. 6:**  CMR waived any right to demand appraisal, the alternative dispute resolution mechanism provided by the policy.  CMR acted inconsistently with that right by bringing its lawsuit, by aggressively litigating the action, and by invoking the power of the court to take discovery against Empire. CMR litigated actively for many months before trying to change course and force Empire into the appraisal process.  The district court's judgment and findings that CMR acted inconsistently with the right to appraisal is supported by undisputed facts, and its ruling accords with a long line of cases finding waiver in similar circumstances.

13

## ARGUMENT

**I.    The district court did not err in granting Empire's motion for summary judgment:  CMR pleaded a case seeking an award of policy proceeds on a full replacement cost basis, but CMR never "actually repaired or replaced" the damaged property, a precondition to recovery of such benefits.**

**A.    CMR never actually repaired or replaced the damaged property, and so is not entitled to recover policy proceeds on a replacement cost basis.**

The policy provides coverage for replacement cost only when repairs are actually performed.  Until then, nothing is owed unless the insured elects to make a claim for actual cash value.  Actual cash value, generally stated, is the full replacement cost of the damaged property less depreciation.  *State Farm Fire & Cas. Co. v. Patrick*, 647 So. 2d 983, 984 (Fla. 3d DCA 1994).  If the optional replacement cost coverage is selected, as it was here, Empire is not obligated to pay *"on a replacement cost basis for any loss or damage until the lost or damaged property is actually repaired or replaced and unless the repairs or replacement are made as soon as reasonably possible after the loss or damage."*  (DE 47-1 at 46, "Replacement Cost" provision.)

The policy provides that the insured may elect to forego the actual repair or replacement that is required under the Replacement Cost provision, and instead request payment on an actual cash value basis. (DE 47-1 at 46, ¶ 3.c.)

3. Replacement Cost

> . . .
> c. You may make a claim for loss or damage
> covered by this insurance <u>on an actual cash
> value basis instead of on a replacement
> cost basis</u>. In the event you elect to have
> loss or damage settled on an actual cash
> value basis, you may still make a claim for
> the additional coverage this Optional Coverage
> provides if you notify us of your intent
> to do so within 180 days after the loss or
> damage.

(DE 47-1 at 46, ¶ 3.c.) (emphasis supplied.)  As the district court found, and CMR readily and repeatedly admited, CMR never made a claim "on an actual cash value basis instead of on a replacement cost basis."   (DE 47-6 at 14, ¶17.)

The Replacement Cost provision (DE 47-1 at 46), requiring actual repair or replacement, is a common, enforceable clause in a property insurance policy.  It is the same policy language that was enforced in *Buckley Towers Condominium, Inc. v. QBE Insurance Corp*., 395 Fed. App'x 659, 662 (11th Cir. 2010) ("The insurance contract specifically provides that QBE 'will not pay on a replacement cost basis for any loss or damage (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.'")

This "actual repair or replacement" requirement is enforced as a matter of course in Florida courts.  In *Fla. Ins. Guar. Ass'n v. Somerset Homeowners Ass'n, Inc.*, 83 So. 3d 850, 852 (Fla. 4th DCA 2011), the Court rejected an argument from

the policyholder that it "was excused from the contractual obligation to complete the repairs before receipt of payment," concurring with this Court's holding in *Buckley Towers*. Going further, the *Somerset* Court cited to other precedent enforcing this "actual repair or replacement" requirement language.

Specifically, it cited to *Ceballo v. Citizens Prop. Ins. Corp*., 967 So. 2d 811, 815 (Fla. 2007) (explaining that with such contracts, replacement cost damages do not arise unless the repairs or replacement have been completed) and *State Farm Fire & Cas. Co. v. Patrick*, 647 So. 2d at 984 (holding that the trial court erred by ignoring the plain language of the replacement cost policy issued to the insured). This is a well-worn path. "Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993). The plain language of the policy controls. *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569 (Fla.2011) ("In interpreting an insurance contract, we are bound by the plain meaning of the contract's text.") This is a plain-language provision: "actually repaired or replaced."

CMR never "actually repaired or replaced" the damaged property, a point that is not disputed. (DE 47-6 at 14, interrog. 16.) CMR expressly made a claim for insurance proceeds on a replacement cost basis. (DE 47-6 at 16-17, interrog. 17 ("Plaintiff is Claiming Replacement Cost Value").) Because CMR never

actually repaired the damaged property, it was not entitled under the plain language of the policy to recover proceeds on a replacement cost basis.

Moreover, CMR never elected to take proceeds on an actual cash value basis.  Actual cash value is generally described as the replacement cost minus depreciation.  "Replacement Cost insurance is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property.  It is insurance on a property's depreciation." *State Farm Fire and Cas. Co. v. Patrick*, 647 So. 2d 983 (Fla. 3d DCA 1994).  "As replacement cost policies are intended to operate, following a loss, both actual cash value and the full replacement cost are determined.  The difference between those figures is withheld as depreciation until the insured actually repairs or replaces the damaged structure.'"  *Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684, 690 (Fla. 2d DCA 2008) (citation omitted).

The fact that CMR never repaired or replaced the damaged property, meant it was not entitled to recover proceeds on a replacement cost basis; and CMR never claimed, and never sued for, proceeds on an actual cash value basis.  This was one of the district court's essential findings, and no error is demonstrated in that finding.

CMR also made a related claim for the estimated, anticipated, and unincurred "Increased Cost of Construction Coverage" that may arise from the

application of "Ordinance and Law" requirements.  (DE 47-1 at 64, ¶ 3.)

Similarly, Empire has no contractual obligation to pay for the "Increased Cost of

Construction" because this cost is not payable "until the property is actually

repaired or replaced . . . as soon as reasonably possible . . . not to exceed two

years." (DE 47-1 at 65, ¶4.a.)  And so CMR is not contractually entitled to recover

policy proceeds for this unincurred, projected expense.  In sum, the district court

was correct:  There was no breach by Empire.

**B.    CMR mis-analyzes the policy; the district court properly applied it.**

The Empire policy provides several "Optional Coverages" including one

called "Replacement Cost." (DE 47-1, pp. 45-46.)  The Empire policy provides

this optional coverage.  (DE 47-1 at 8.)  The Optional Replacement Cost provision

allows the policyholder to recover proceeds on a Replacement Cost basis, *i.e.*,

without deduction for depreciation, but only if the damaged property is "actually

repaired or replaced."  The "Replacement Cost" provision, with all of the pertinent

parts, is set out here:

**G. Optional Coverages**

If shown as applicable in the Declarations, the following
Optional Coverages apply separately to each item.
. . .

**3.    Replacement Cost**

**a.**    Replacement Cost (without deduction for
depreciation) replaces Actual Cash Value in

the Loss Condition, Valuation, of this
Coverage Form.

. . .

**c.**    You may make a claim for loss or damage
covered by this insurance on an actual cash
value basis instead of on a replacement cost
basis.  In the event you elect to have loss or
damage settled on an actual cash value basis,
you may still make a claim for the additional
coverage this Optional Coverage provides if
you notify us of your intent to do so within
180 days after the loss or damage.

**d.**    We will not pay on a replacement cost basis
for any loss or damage:

**(1)**    Until the lost or damaged property is
actually repaired or replaced; and

**(2)**    Unless the repairs or replacement are
made as soon as reasonably possible
after the loss or damage.

(DE 47-1 at 46.) Paragraph 3.d. of this provision is the critical provision <u>not</u>

identified by CMR in its Initial Brief.[3]   Instead, CMR identifies only paragraphs

3(a) and (c).  (IB, pp. 10-11, 13-14.)  But section 3.d. provides the controlling

portions of the contract in this case:  Did the policyholder actually repair or replace

the damaged property as soon as possible after the damage occurred?  If the answer

---

[3]  CMR's Initial Brief, p. 29 does quote such a clause that was enforced in the case
of *State Farm Fire and Casualty Co. v. Patrick*, 647 So. 2d 983 (Fla. 3d
DCA1994), but CMR never tells this Court that this same enforceable clause exists
in the Empire policy at issue here.

is "yes," then the insurer would pay on a replacement cost basis without deduction of the depreciation limited to the amount actually spent.

If the answer is "no" then the insurer is not contractually obligated to pay proceeds on a replacement cost basis. [4]  And in verified interrogatory answers, CMR established that the damaged property had not been actually repaired or replaced. (DE 47-6 at 8,¶ 6.)

Without this actual repair or replacement, the insurer is not obligated to pay proceeds on a replacement cost basis. *American Reliance Ins. Co. v. Perez*, 689 So. 2d 290, 291 (Fla. 3d DCA 1997) (construing similar language, and noting "the purpose of the policy is either to compensate those insureds who elect not to repair or replace the damaged portion of their property by paying them fair market value (which inherently includes a deduction for depreciation) for the loss or damage they suffered, or, if repair or replacement is made, to compensate the insureds at cost without depreciation (as repair or replacement is to be made with new materials")).

## II.    CMR has no basis in law or in fact to claim Empire breached the insurance contract, and has not demonstrated that the district court erred in relying on the *Buckley Towers* case.

### A.    CMR has always and only made a claim for policy proceeds computed on a replacement cost basis.

---

[4]  This is the clause enforced in the cases of *Buckley Towers, Ceballo, Patrick,* and *Somerset Homeowners Ass'n, Inc., supra.*

The Orchards/CMR have always claimed proceeds calculated on a *replacement cost basis*.  CMR sued Empire seeking payment on a *replacement cost basis*.  (DE 3, ¶16.)  CMR swore under oath in interrogatories that it seeks payment calculated on *a replacement cost basis*.  "Plaintiff is claiming Replacement Cost Value.  The scope of Plaintiff's damages is $6,445,253.32, as reflected in Plaintiff's estimate dated June 17, 2019."  (DE 47-6, ¶ 17.)  CMR cannot now on appeal claim that it was not paid sufficient *actual cash value* benefits.

Empire did make a payment to The Orchards in the course of adjusting the claim before CMR filed suit.  (DE 27-1 at 3.)  About a month after Hurricane Irma, The Orchards reported a claim for damage to two of its buildings.  (DE 27-1, ¶ 6.) J.S. Held, Empire's building consultant, made a complete survey of the buildings and thereafter a payment was made.  (DE 27-1 at 3, ¶ 11.)  The detail of this adjustment and payment are set out in the affidavit of Empire's corporate representative, Peter Hanrahan ("Hanrahan").  (DE 27-1, ¶¶ 8-9, 11.)  Hanrahan's affidavit was filed in support of Empire's opposition to the motion to compel appraisal, and establishes that at no time did The Orchards or CMR make an actual cash value claim.

But aside from proving that Empire promptly responded to the policyholder, thoroughly inspected all the damage, always acknowledged coverage, and abided by its contractual obligations, the matter of Empire's payment is irrelevant at this

late point in the litigation.  This case is about CMR's baseless claim that Empire always owed policy proceeds on a full replacement cost basis.  But Empire did not owe such benefits because CMR never actually repaired the damaged property.

### B.    The CMR estimate has no evidentiary value as proof of the actual cash value of the damaged property, and does not create any genuine dispute of material fact as to Empire's valuations.

CMR's claims on appeal are devoid of merit.  CMR adduced no evidence for the record of any breach by Empire.  The CMR replacement cost estimate contains a purported statement of the actual cash value of the insured property, but it is a false-front.  For example, the CMR estimate (DE 47-5. at 2), on building 1-7701 contains a column for replacement cost ("RCV") and depreciation ("DEPREC") and a third column for actual cash value ("ACV").  But the CMR replacement cost estimate depreciation column is uniformly valued at "(0.00)."

This zero value for depreciation for a roof more than 20 years old (DE 47-4, at 972 – 973, 1064 – 1065) is facially false; a 20-year-old roof has some amount of depreciation.  And using that zero value to determine actual cash value results in a false estimate – i.e., that the asserted replacement cost is the same as the actual cash value, as CMR applies no depreciation to the replacement cost.  For this reason, the CMR estimate has no evidentiary value as proof of the actual cash value of the damaged property, and does not create any genuine dispute of material fact as to Empire's valuations.  This point is important because it shows CMR

adduced <u>no substantial competent evidence</u> as to the actual cash value of the damaged property.

In the end, the determinative point is that CMR never opted for, or pleaded a claim for actual cash value proceeds. Even if an actual cash value claim had been well-pleaded, CMR provided no evidence of an actual cash value claim or amount. The reference in CMR's estimate as including an actual cash value amount is belied by the sworn interrogatory answer referencing it–quite rightly—purely as a replacement cost estimate. (DE 47-6 at 14, ¶17.) And a close review of the CMR estimate reveals that in no way does it reflect a true actual cash value amount. The district court was not required to search the record for evidence of some breach of contract that the CMR never bothered to plead or try to prove.

### C. The case of *Citizens Prop. Ins. Corp. v. Tio*, No. 3D18-2440, 2020 WL 1291855 (Fla. 3d DCA Mar. 18, 2020) has no application to this case.

In the *Tio* case, Citizens denied coverage for the policyholder's claim. *Id*. at *1. The state appellate court said in its opinion that this denial of Tio's claim forced her to sue Citizens. After her suit was filed, Citizens changed course and acknowledged coverage. Citizens then argued that its homeowner's policy limited the damages that could be recovered at trial to the actual cash value of the loss as Tio had not undertaken any repairs to the subject property. *Id.* Tio sought damages in the full amount of the policy limits.

23

The *Tio* case has no application to this Court's review because it regards a homeowner's policy subject to section § 627.7011, Fla. Stat., a statute with no application to this commercial insurance policy.  Further, Empire never denied coverage or in any way forced CMR to file suit.  The district court ruled Empire did not breach the contract.  The record facts show Empire promptly acknowledged coverage and fulfilled all its contractual obligations.  And as CMR had not "actually repaired or replaced" any of the damaged property, under the terms of the Empire policy no payment on a replacement cost basis was due or made.  There is no evidence of any breach by Empire, and so the *Tio* case is inapposite.

### D.    The district court did not err in citing to the case *of Buckley Towers*.

CMR attempts to distinguish the case of *Buckley Towers* on one baseless point:  CMR's assertion on appeal is that Empire breached the Policy in how it made its pre-suit payment, and therefore, it cannot "enforce the terms of the policy at its convenience…"  (IB at 33.)  But CMR's pleaded case in the district court was that Empire breached the contract by not paying proceeds calculated on a replacement cost basis from the start. (DE 13, ¶¶ 15, 16.)  And as is fully established, CMR never opted for, and never pleaded that Empire breached the contract by not paying the proper amount of proceeds calculated on an actual cash value basis.

24

CMR could have pleaded such "actual cash value" breach allegations, but it did not do so.  CMR then could have attempted to develop some proof to support its "actual cash value" breach claim.  Again, it did not do so.  Finally, it could have presented those claims and whatever evidence it thought appropriate to the district court for adjudication, but it did not do so - CMR always and only claimed proceeds on a replacement cost basis.

CMR provides only "attorney argument" that fact issues exist about the irrelevant facts surrounding the adjustment of the claim pre-suit, arguing Empire's adjustment was insufficient.  But "counsel's argument is not evidence."  *Bryant v. U.S. Steel Corp.*, 428 F. App'x 895, 897 (11th Cir. 2011).  Not only did CMR never plead breach of contract based on the underpayment of proceeds on an actual cash value basis; CMR never adduced any proof that would have supported such a claim had it been made.  For these and other reasons the district court properly ruled: "Nor did Empire breach the policy in failing to pay ACV because CMR never requested payment for ACV."  (DE 72 at 4.)  Given this facially correct ruling, the *Buckley Towers* case is on point and the district court correctly relied on it.

###### E.  CMR has waived all argument as to the central provision at issue in this case - the replacement cost provision in the parties' contract requiring "actual replacement."

CMR does not once cite to or discuss the controlling provisions of the Replacement Cost coverage, paragraph 3.d.  (DE 47-1, p. 46.)  It is in these

provisions that the contract requires "actual repair of the damaged property."

Instead, CMR discusses only paragraphs 3.a and c.  (IB at pp. 9-10, 13-14.)

Paragraph 3.d states plainly, that "We will not pay on a replacement cost basis for

any loss or damage (1) Until the lost or damaged property is actually repaired or

replaced and (2) Unless the repairs are made as soon as reasonably possible after

the loss or damage." This provision is not mentioned by CMR even to argue it is

inapplicable.  Empire placed the Replacement Cost provision, requiring "actual

replacement of damaged property," at the center of its motion for summary

judgment.  (DE 47 at 4, 8-10.)  The district court made this Replacement Cost

provision one of the principal bases of its summary judgment order.  (DE 72 at 2.)

> The policy states that Empire 'will not pay on a replacement cost basis
> for any loss or damage:  (1) Until the lost or damaged property is
> actually repaired or replaced; and (2) Unless the repairs or
> replacements are made as soon as reasonably possible after the loss or
> damage.'  (Policy (Docket No. 47-1) at 46.)  Thus, under the plain
> terms of the policy, CMR is responsible for making repairs before
> Empire owes any RCV.

(DE 72 at 2-3.)

But CMR chose to leave out of its principal brief this central provision of the

contract, relied on by Empire in its motion for summary judgment and analyzed

and accepted by the district court in its summary judgment order.  The

consequence of CMR's silence in its Initial Brief is that CMR is now barred from

raising arguments about this actual replacement requirement in paragraph 3.d. for

the first time in its reply brief. *Sapuppo v. Allstate Ins. Co*., 739 F.3d 678, 682

(11th Cir. 2014) ("As for reply briefs, this Court … repeatedly has refused to

consider issues raised for the first time in an appellant's reply brief.").  "Arguments

raised for the first time in a reply brief are not properly before a reviewing court."

*United States v. Coy*, 19 F.3d 629, 632 n. 7 (11th Cir. 1994).  "Issues not clearly

raised in the briefs are considered abandoned."  *Marek v. Singletary*, 62 F.3d 1295,

1298 n. 2 (11th Cir. 1995).

The district court properly granted Empire's summary judgment motion, and

it should be affirmed in all respects.

## III.    The district court correctly denied CMR's motion to stay the litigation and compel appraisal. (DE 30.)

### A.    CMR acted inconsistently with its right to seek appraisal, and thereby waived that right.

The issue is this:  Did the district court err in finding that CMR waived its

right to invoke the appraisal provision (DE 34) of the policy by bringing suit and

prosecuting its action for several months before seeking appraisal?  The policy, the

contract of the parties, contains an appraisal provision.  (DE 47-1 at 48.)  "In

Florida appraisal clauses in insurance policies have generally been treated as

arbitration provisions."  *Gray Mart, Inc. v. Fireman's Fund Ins. Co.*, 703 So. 2d

1170, 1172 (Fla. 3d DCA 1997).  Appraisal is an alternate dispute resolution

mechanism.  (DE 47-1 at 41.) *See, e.g., State Farm Fla. Ins. Co. v. Crispin*, 290

So. 3d 150, 151 (Fla. 5th DCA 2020) (referring to appraisal as an ADR process).

Appraisal, like arbitration, is a contractual right that can be waived by a party if

that party acts inconsistently with its right.

> Florida courts recognize that a party's contractual right to arbitration
> may be waived by actively participating in a lawsuit or taking action
> inconsistent with that right. *Klosters Rederi A/S v. Arison Shipping
> Company*, 280 So.2d 678 (Fla.1973); *Ojus Industries, Inc. v. Mann*,
> 221 So.2d 780 (Fla. 3d DCA 1969), as does initiating legal action
> without seeking arbitration. . . .

*Seville Condominium v. Clearwater Development Corp.*, 340 So. 2d 1243 (Fla. 2d

DCA 1976).  "The right to arbitration, like any contract right, can be waived."

*Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005)

(quoting *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d

772, 774 (D.C. Cir. 1987).

> Waiver is the "voluntary and intentional relinquishment of a known
> right or conduct which implies the voluntary and intentional
> relinquishment of a known right." []  The right to arbitrate "must be
> safeguarded by a party who seeks to rely upon that right, and the party
> must not act inconsistently with the right."

*SHP IV Harbour Island, LLC v. Boylan*, 273 So. 3d 249, 250–51 (Fla. 5th DCA

2019) (citation omitted.)  Here, as discussed below, the facts show that CMR acted

inconsistently with its right to appraisal; it did not safeguard the right; and the

district court applied the correct law to those facts to find that under the totality of

the circumstances, the right to appraisal had been waived.

28

**B.    The trial court applied the correct law to the uncontested facts and reached the correct conclusion:  CMR waived any right to seek appraisal.**

The pertinent chronology is this:

- Hurricane Irma struck Florida and damaged the insured property on or about September 10, 2017.  (DE 27, ¶ 2.)

- CMR made its claim to Empire on October 12, 2017, and Empire proceeded to investigate and estimate the damage to the property, thereby accepting coverage for the loss.  (DE 27-1, ¶ 6-8, declaration establishing date of Empire's first inspection of the damaged property in October 2017; DE 27, ¶¶ 3-5; DE 57-3 at 3 of 25.) [5]

- CMR "voluntarily and intentionally" sued Empire for breach of contract in November 2018 (DE 3) serving with its complaint, interrogatories, requests for admission, and requests for production of forty-five categories of documents. (DE 34 at 4.)

- CMR filed it motion to stay litigation and compel appraisal in April 2019. (DE 34.)

CMR alleged in its suit that Empire had breached the contract by not paying full replacement cost for the roofs.  (DE 3, ¶¶ 15-17.)  CMR made no demand for

---

[5]  Note the disparity in CMR's answers to interrogatories at (DE 47-6 at 1 ("On March 21, 2018, The Orchards made an insurance claim to Empire for Irma-related damage.")).

appraisal before suing Empire, nor is any such demand contained in CMR's complaint.  Empire then removed the case, and neither the parties' Case Management Report (DE 14) nor the district court's case management order (DE 17) says anything of appraisal.  CMR made no effort in any representation to the court, orally or in writing, "safeguarding" any right to appraisal.  Both the Report and the Order contain the parties' agreed schedule to litigate the issues raised in CMR's complaint, and note their demand for a trial by jury, an option inconsistent with appraisal.  (DE 14 at 2; DE 17 at 2.)  Not until April 2019 did CMR file its motion to stay the litigation that it had commenced and prosecuted for many months, and try to force Empire to appraisal.

Empire opposed this appraisal motion on many bases.  (DE 27.)  Ultimately, the district court ruled that CMR had waived its right to appraisal.  (DE 34.)  The district court noted that filing a lawsuit, standing alone, is not always sufficient to find waiver, but here found there was much more.  The district court made the requisite findings of fact as follows:

> The facts of this case after February 26, 2018, establish that plaintiff waived its right to an appraisal. After that date, CMR:

> - Exchanged documents with Empire which established vastly different views as to the amount of damage and the cost to repair that damage.
> - Waited approximately seven months to file suit in state court, during which time it never invoked the appraisal right.
> - Extensively litigated its lawsuit in state court, serving Empire with an interrogatory request that included nineteen interrogatories and a request for

production that included forty-five categories of documents, as well as requests for admission. (Doc. #1-6.)

- After removal to federal court, CMR participated in a case management conference and a case management and scheduling order has been issued. (Docs. ##14, 17.) The mandatory initial disclosure deadline and the deadline to add parties or amend pleadings have passed, both before CMR filed its Motion to Compel Appraisal.

(DE 34 at 111-12.)

The accuracy of the district court's findings is not disputed by CMR. CMR only asks this Court to second-guess and dismiss the district court's judgment as to the effect of these undisputed facts. This is no basis for reversal.

> **C.    The undisputed facts, interpreted in light of the controlling law, show that the district court was correct: CMR acted inconsistently with its right to seek appraisal and thereby waived that right.**

Empire acknowledged that The Orchards had sustained a covered loss when the claim was made in or about March 2018. (DE 47-6 at 1.) If the parties have a disagreement about the amount of loss, then appraisal may be be invoked at that time. *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005). However, after waiting seven months following Empire's admission of coverage, CMR made a decision not to seek appraisal, but rather to sue Empire for breach of contract. Then, six months after that, Empire attempted to reverse course and force Empire into the appraisal process.

This long delay, combined with significant discovery and litigation activities, demonstrate that CMR acted inconsistently with, and so waived, its right to appraisal. "[A] party can waive a right to an appraisal when the party's conduct is inconsistent with that right." *Fla. Ins. Guar. Ass'n v. Waters*, 157 So. 3d 437, 440 (Fla. 2d DCA 2015); *Fla. Ins. Guar. Ass'n v. Reynolds*, 148 So. 3d 840, 842 (Fla. 5th DCA 2014) (accord and collecting similar cases.) "[T)the question of waiver of appraisal is not solely about the length of time the case is pending or the number of filings the appraisal-seeking party made. Instead, the primary focus is whether [the insureds] acted inconsistently with their appraisal rights. *Fla. Ins. Guar. v. Reynolds*, 148 So. 3d 840, 841 (Fla. 5th DCA 2014) (citing *Fla. Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488, 493–94 (Fla. 5th DCA 2014)). The district court's assessment of CMR's delay and litigation actions inconsistent with their appraisal rights is directly in line with the Florida case law on the issue.

In *Wynmoor Cmty. Council, Inc. v. QBC Ins. Corp.*, No. 10-62411-CIV, 2011 WL 13097086 (S.D. Fla. Aug. 12, 2011), the district court found waiver where the

> Plaintiffs brought the suit, responded to a motion to dismiss by filing an amended complaint, participated in a joint scheduling report, propounded discovery and responded to discovery requests, all before invoking the appraisal clause. If prejudice is a factor to be considered, the Court finds that Defendant has been prejudiced by having to respond to seven and one-half months of litigation before Plaintiffs altered their approach by seeking an appraisal.

32

*Id.* at *1. *See also Morrell v. Wayne Frier Manufactured Home Ctr.*, 834 So. 2d 395, 395–98 (Fla. 5th DCA 2003) (finding waiver where party litigated for eleven months with various motions and pleadings); *ARI Mut. Ins. Co. v. Hogen*, 734 So. 2d 574, 576 (Fla. 3d DCA 1999) (finding waiver when party engaged in "aggressive" litigation for nine months); *Owens & Minor Med., Inc. v. Innovative Mktg. & Distribution Servs., Inc.*, 711 So. 2d 176, 176 (Fla. 4th DCA 1998) (finding waiver when party litigated for thirteen months); *Gray Mart, Inc. v. Fireman's Fund Ins. Co.*, 703 So2d 1170, 1171–73 (Fla. 3d DCA 1997) (finding waiver following fourteen months of litigation and demand for appraisal one month before trial).

The prejudice can be found in the legal fees and costs that Empire incurred in this time frame. The district court here concluded:

> The Court finds that plaintiff [CMR] acted inconsistently with its right to appraisal by seeking to benefit from conducting discovery [footnote omitted] and otherwise engaging in litigating the case for seven months before invoking appraisal, with prejudice undoubtedly inuring to Empire via attorney's fees and costs. *See Shoma Dev. Corp. v. Rodriguez*, 730 So. 2d 838 (Fla. 3d DCA 1999) (finding waiver where parties had actively engaged in litigation and discovery for seven months before invoking the arbitration clause, prejudicing the homeowners). The Court finds under the totality of the circumstances that CMR acted inconsistently with its appraisal right and denies the Motion to Compel Appraisal.

(DE 34 at 12.)

33

In sum, the district court's decision accords with the record facts and the applicable law. This Court should affirm that ruling denying the motion to compel appraisal. (DE 34.)

### D. Alternatively, the appraisal process was not available under the plain terms of the contract, and the undisputed record facts.

The appraisal process set forth in the Empire policy was not triggered, as it requires that the parties disagree as to the "amount of loss" as a prerequisite to invoking that remedy. ("If we and you . . . Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss. . ..") (DE 47-2 at 43.) Empire asserted in its response to CMR's motion to compel that no such proper disagreement existed. (DE 27 at 10-12.) The district court did not deny CMR's appraisal motion on this basis, but it could have validly done so. And these alternative arguments made by Empire in the district court provide this Court with alternative grounds for affirmance. *Jaffke v. Dunham*, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957) ("A successful party in the District Court may sustain its judgment on any ground that finds support in the record"); *Lucas v. W. W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) (appellate court "need not decide whether the district court properly resolved that issue if there is another basis for affirming its judgment" because affirmance may be based "'on any ground that finds support in the record'").

34

The Orchards and Empire never disagreed on "the value of the property or the amount of loss," as required by the policy, as to any claim on an *actual cash value* basis. Recall, CMR never made claim to Empire for payment on an actual cash value basis. And CMR's estimate (DE 47-5) contained no substantial competent evidence of actual cash value. *See* explanation of this point in section II. B., *supra*. Thus, there was no "disagreement" between the parties as to the amount of loss on an *actual cash value basis* for any appraisers to address.

Further, any disagreement between the parties on the amount of loss on a *replacement cost basis* was never ripe and ultimately became moot as there was no justiciable issue for the court or the appraisers to resolve. *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Georgia*, 633 F.3d 1297, 1308 (11th Cir. 2011) ("A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief.")

CMR pleaded and at all times admitted that it had made no repairs. And, as later ruled by the district court in its order granting Empire's motion for summary judgment, such repairs were a prerequisite to recovery of proceeds on a replacement cost basis. So, even if the appraisers had convened to resolve a difference over the amount of loss on a replacement cost basis, no such appraisal award would have been payable. As the district court ultimately ruled, no such

proceeds were payable as CMR had not actually repaired or replaced the damaged property.

> Empire did not breach the policy in failing to pay the RCV because CMR did not undertake any repairs to which that policy provision applied. Nor did Empire breach the policy in failing to pay ACV because CMR never requested payment for ACV.

(DE 72 at 2, 4.)

The decision of the district court to deny CMR's motion to compel appraisal was correct for all these reasons. And, in any event, the affirmance of the summary judgment on the action pled by CMR ends this case and all requested relief demanded by CMR, including appraisal.

## CONCLUSION

The judgment of the district court should be affirmed in all respects.

BUTLER WEIHMULLER KATZ
CRAIG LLP

_____
ANTHONY J. RUSSO, ESQ.
Florida Bar No.: 508608
arusso@butler.legal
J. PABLO CÁCERES, ESQ.
Florida Bar No.: 131229
pcaceres@butler.legal
Secondary: rburnison@butler.legal
400 North Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile:  (813) 281-0900
*Attorneys for Appellee Empire Indemnity*
*Insurance Company*

## CERTIFICATE OF COMPLIANCE

Appellee, Empire Indemnity Insurance Company's Answer Brief complies with the word and page limits of the Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding all parts of the document exempted by rule 32(f) and 11th Circuit Rule 32-4, this document contains 8,791 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been

_____
ANTHONY J. RUSSO, ESQ.


## CERTIFICATE OF SERVICE

I certify that on October 12, 2020, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

_____
ANTHONY J. RUSSO, ESQ.